JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Ladon Williams, appeals the trial court's judgments convicting him of, inter alia, firearm specifications, and sentencing him to 18 years in prison. For the reasons that follow, we affirm.
 {¶ 2} The record before us demonstrates that appellant and one of the victims in this case, John Taylor, first became acquainted years ago, and then recently from time they spent together in prison. Upon their releases from prison, they reestablished their relationship. Taylor, a barber, would occasionally allow appellant to come to his home for haircuts.
 {¶ 3} Taylor and appellant's accounts of what occurred on the date in question are divergent. According to Taylor, appellant made an "appointment" with him at his home for a haircut. Appellant arrived at Taylor's home with an unknown male, who appellant claimed was his brother and who also wanted a haircut. Almost immediately upon entering the house, appellant grabbed a pair of scissors from the dining room table and held them to Taylor's throat, while the unknown man brandished a firearm and demanded money from Taylor and Lemoyne Nesbitt, Taylor's best friend who was present in the home.
 {¶ 4} Also present in the home, and victims of the within crimes, were Patience Jarba, Taylor's girlfriend, and Dylan Taylor, Jarba and Taylor's then 9-month-old son. Nesbitt and Jarba testified as to how they, along with 9-month-old Dylan, were duct taped by appellant while he and the unknown man demanded money. After appellant and the unknown assailant took money from Taylor and Nesbitt, they fled the scene. Taylor was subsequently able to free himself from the duct tape and, in turn, freed Nesbitt, Jarba and the baby.
 {¶ 5} Several hours after the incident, a vehicle described by Taylor as the vehicle appellant drove on the date in question was located. The vehicle had been reported stolen by appellant's wife, and contained duct tape.
 {¶ 6} Appellant testified at trial that he had an alibi for the date and time in question, and that Taylor had concocted the whole story for revenge because appellant conned him out of $1500 while they were in prison together.
 {¶ 7} Appellant waived his right to a jury trial, and following a bench trial was convicted of the following crimes: one count of aggravated burglary with a firearm specification, notice of prior conviction, and repeat violent offender specification; two counts of aggravated robbery, each with a firearm specification, notice of prior conviction, and repeat violent offender specification; four counts of kidnapping; and one count of possession of criminal tools.
 {¶ 8} Appellant waived his right to a presentence investigation, and was sentenced to a total of 18 years in prison. Appellant now challenges his convictions on the firearm specifications, the sentence imposed upon him, and argues that he was deprived of effective assistance of counsel.
 {¶ 9} In his first assignment of error, appellant argues as follows:
 {¶ 10} "Mr. Williams has been deprived of his liberty without due process of law by his convictions on the firearm specification which was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 {¶ 11} In this assignment of error, appellant contends that the State failed to prove that the firearm was operable. Before reaching the substance of this claim, we note that appellant did not bring this issue to the attention of the trial court by motion, objection or otherwise. While appellant did make a Crim.R. 29 motion for acquittal at the close of the State's case, his only argument in regard to the gun was that the testimony demonstrated that the unknown assailant, as opposed to him, had the gun.[1] Appellant never raised the issue of the operability of the gun. The general rule is that an appellate court will consider only such errors as were "preserved" in the trial court. State v. Childs (1968),14 Ohio St.2d 56; State v. Williams (1974), 39 Ohio St.2d 20.
 {¶ 12} This prohibition, however, is not absolute. The reviewing court has discretion under Ohio rules to choose those unpreserved issues which it will decide. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Thus, we will review this assigned error under a plain error analysis.
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 14} In State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, the Supreme Court of Ohio stated the following with regard to sufficiency of the evidence:
 {¶ 15} "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220,72 L.Ed.2d 652, 663, citing Jackson v. Virginia, [supra]." Id. at 386-387.
 {¶ 16} A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case. Cohen v. Lamko
(1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 17} R.C. 2923.11 defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). This definition includes "an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." Id. According to the Supreme Court of Ohio, a firearm specification can be proven beyond a reasonable doubt by circumstantial evidence. Thompkins, supra, paragraph one of the syllabus; R.C. 2923.11(B)(2). That evidence may consist of the testimony of lay witnesses who were in a position to observe the instrument and the circumstances of the crime. State v. Murphy (1990), 49 Ohio St.3d 206,551 N.E.2d 932, syllabus.
 {¶ 18} Furthermore, in Thompkins, supra, the Supreme Court of Ohio rejected the view that the circumstantial proof of operability must consist of certain recognized indicia, such as bullets, the smell of gunpowder, bullet holes, or verbal threats by the user of the weapon that he or she would shoot the victim. Id. at 382. The Thompkins court held that anything that looks like a gun and is brandished is "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." Id. at 383. Thus, operability or potential operability may be proven where an individual "brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense." Id. at 384.
 {¶ 19} Here, even though the gun was never recovered, Taylor, Nesbitt, and Jarba all unequivocally testified that the unknown assailant brandished a gun as he demanded money from Taylor and Nesbitt. Although there was no direct evidence that the gun was operable, or that explicit threats from appellant or the unknown assailant were made, the implication from the acts of appellant and the unknown assailant were clear: they were threatening to use the gun if Taylor and Nesbitt did not cooperate. Viewed in the light most favorable to the State, the circumstantial evidence was sufficient under Thompkins to prove that a firearm was used during the robberies.
 {¶ 20} Moreover, appellant's argument that the evidence was insufficient for a conviction on the firearm specifications because the unknown assailant, rather than he, had the gun, is unpersuasive. Accomplices to a crime may be punished as if they were the principal offenders. State v. Coleman (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph two of the syllabus. R.C. 2923.03, the complicity statute, provides that "no person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense[.]" R.C. 2923.03(A)(2). To aid and abet, one must assist, incite, or encourage a crime. State v. Woods (1988),48 Ohio App.3d 1, 6, 548 N.E.2d 954, 960. Mere presence of an individual at the scene of a crime is not sufficient to prove that he or she was an accomplice. State v. Widner (1982), 69 Ohio St.2d 267, 269,431 N.E.2d 1025, 1027. But aiding and abetting may be demonstrated by direct or circumstantial evidence and can be inferred from "presence, companionship and conduct before and after the offense is committed."State v. Pruett (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884, 887. It can also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. State v. Smith (Jan. 24, 1996), Lorain App. No. 95CA006070.
 {¶ 21} Here, the evidence established that appellant was the mastermind of this crime. He knew Taylor and used his acquaintance with him to gain his and the unknown assailant's access to Taylor's home. Upon driving himself and the unknown assailant to Taylor's home, appellant and the unknown assailant's actions almost immediately upon entering the house demonstrated their intent. Specifically, appellant grabbed a pair of scissors and held them to Taylor's throat, while the unknown assailant brandished a firearm and demanded money from Taylor and Nesbitt. After obtaining money, the two fled the scene, leaving their victims bound with duct tape. Moreover, several hours after the incident, a vehicle described by Taylor as the vehicle appellant drove to his home on the date in question was located with duct tape near it. The vehicle had been reported stolen by appellant's wife.
 {¶ 22} From this evidence, viewed in the light most favorable to the State, a reasonable jury could conclude beyond a reasonable doubt that appellant was an accomplice. Thus, the trial court properly denied the Crim.R. 29(A) motion for acquittal, and we overrule appellant's first assignment of error.
 {¶ 23} In his second assignment of error, appellant contends that:
 {¶ 24} "The trial court erred at sentencing by noting that the kidnapping charges merged with other counts and then, nonetheless, sentencing Mr. Williams to a concurrent sentence for the kidnapping charges." (Emphasis added.)
 {¶ 25} Initially, we note that there was no objection at sentencing to the trial court's imposition of concurrent time for the kidnapping charges. Thus, pursuant to Crim.R. 52(B), we will review this assigned error under a plain error analysis.
 {¶ 26} We note that the trial court did not find, as appellant argues, that the kidnapping counts merged with the other counts. Rather, the trial court found that the kidnapping counts merged with each other.
Nonetheless, we will address why the trial court properly convicted and sentenced appellant on the kidnapping counts.
 {¶ 27} In State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291,710 N.E.2d 699, the Supreme Court of Ohio held that the prohibition against cumulative punishments contained in Blockburger v. United States
(1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, does not apply where the General Assembly clearly intended to impose cumulative punishment.Rance, at paragraph three of the syllabus. In determining legislative intent, the Court stated:
 {¶ 28} "We discern the General Assembly's intent on this subject through review of Ohio's multiple-count statute, R.C. 2941.25. If the court's sentencing of Rance accords with the multiple-count statute, that harmony with the legislative intent precludes an `unconstitutional' label. See Albernaz [v. United States (1981)], 450 U.S. [333] at 344, 101 S. Ct. [1137] at 1145, 67 L. Ed. 2d [275] at 285; [State v.] Bickerstaff
[1984], 10 Ohio St. 3d [62] at 65-66, 10 OBR [352] at 355-356, 461 N.E.2d [892] at 895-896. This court has stated that Ohio's multiple-count statute `is a clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses.'" Rance at 635, quoting Bickerstaff, supra.
 {¶ 29} "If a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C.2941.25(B). State v. Jones, 78 Ohio St.3d 12, 13-14, 1997-Ohio-38,676 N.E.2d 80, 81." Rance at 635-636.
 {¶ 30} In this case, then, we look to R.C. 2941.25, Ohio's multiple-count statute, to determine whether cumulative punishment is authorized. The statute provides that:
 {¶ 31} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 32} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 33} In conducting an allied-offense analysis, the Supreme Court of Ohio has stated the following:
 {¶ 34} "This court has generally not found the presence or absence of any specific factors to be dispositive on the issue of whether crimes were committed separately or with a separate animus. * * * Instead, our approach has been to analyze the particular facts of each case before us to determine whether the acts or animus were separate. See State v.Nicholas (1993), 66 Ohio St.3d 431, 435, 613 N.E.2d 225, 229; State v.Hill (1992), 64 Ohio St.3d 313, 332, 1992-Ohio-43, 595 N.E.2d 884,899-900; State v. Jells (1990), 53 Ohio St.3d 22, 33, 559 N.E.2d 464, 475;Newark v. Vazirani (1990), 48 Ohio St.3d 81, 83-84, 549 N.E.2d 520, 522;State v. Powell (1990), 49 Ohio St.3d 255, 262, 552 N.E.2d 191, 199." (Footnote omitted.) State v. Jones, supra at 14.
 {¶ 35} R.C. 2905.01 governs the crime of kidnapping and provides as follows:
 {¶ 36} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 37} "(1) To hold for ransom, or as a shield or hostage;
 {¶ 38} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 39} "(3) To terrorize, or to inflict serious physical harm on the victim or another;
 {¶ 40} "(4) To engage in sexual activity, as defined in section 2907.01
of the Revised Code, with the victim against the victim's will;
 {¶ 41} "(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority.
 {¶ 42} "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim, or in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 43} "(1) Remove another from the place where the other person is found;
 {¶ 44} "(2) Restrain another of his liberty;
 {¶ 45} "(3) Hold another in a condition of involuntary servitude.
 {¶ 46} "(C) Whoever violates this section is guilty of kidnapping, a felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree."
 {¶ 47} The issue of whether the single criminal act of kidnapping could constitute two or more similar crimes was addressed in detail by the Supreme Court of Ohio in State v. Logan (1979), 60 Ohio St.2d 126. InLogan, the Court noted that "when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery." Id. at 131. The Court noted that "without more, there exists a single animus, and R.C. 2941.25
prohibits convictions for both offenses." Id. at 132.
 {¶ 48} In reviewing what other states have done in regard to "merger of crimes," as it is commonly known, the Supreme Court of Ohio noted that it disagreed with those states that require movement of the victim to sustain a conviction for kidnapping along with a conviction for the underlying crime. In that regard, the Court stated, "[w]e believe that prolonged restraint without asportation may be as penologically significant as substantial asportation and, under certain circumstances, will support a conviction for kidnapping as a separate act or animus from that of [the underlying crime]." Id. at 135.
 {¶ 49} In determining whether the restraint or movement is merely incidental to the separate underlying crime, or if it has a significance independent of the underlying offense, the Court considered whether the detention was brief, the movement slight, and if the victim was released immediately following the commission of the underlying crime. Id. In considering those circumstances, the Court held that the standard requires "an answer to the further question of whether the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime. If such increased risk of harm is found, then the separate offense of kidnapping could well be found." Id.
 {¶ 50} In this case, we find that something more than just kidnapping to commit robberies occurred. Not only were the victims, including the then nine-month-old baby, restrained of their liberty by appellant and the unknown assailant as they were threatened with weapons (i.e., the gun and scissors), they were duct taped and left by appellant and the unknown assailant to free themselves. Based upon those facts, appellant and the unknown assailant subjected their victims to a substantial increase in the risk of harm. Their actions of binding the victims and leaving them to free themselves were not merely incidental to the robberies, but had a significance independent of the robberies. Thus, the trial court did not commit plain error in convicting and sentencing appellant on the kidnapping counts.
 {¶ 51} Appellant's second assignment of error is overruled.
 {¶ 52} In his third assigned error, appellant maintains that:
 {¶ 53} "Mr. Williams was deprived of his constitutional right to effective assistance of counsel, by trial counsel's failure to object to his multiple sentences for allied offenses of similar import."
 {¶ 54} In order to demonstrate a claim of ineffective assistance of counsel, appellant must show that his counsel deprived him of a fair trial. Specifically, appellant must show that: 1) defense counsel's performance at trial was seriously flawed and deficient; and 2) the result of the trial would have been different if defense counsel had provided proper representation at trial. Strickland v. Washington (1984),466 U.S. 668; State v. Brooks (1986), 25 Ohio St.3d 144.
 {¶ 55} A presumption that a properly licensed attorney executes his duty in an ethical and competent manner must be applied to any evaluation of a claim of ineffective assistance of counsel. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
 {¶ 56} Upon review, we find that appellant has failed to prove either prong of the Strickland test and, thus, failed to demonstrate that he received ineffective assistance of counsel.
 {¶ 57} Accordingly, appellant's third assignment of error is overruled.
 {¶ 58} In his fourth assignment of error, appellant argues as follows:
 {¶ 59} "The sentence imposed against Mr. Williams, which involved sentencing enhancements, not found by a jury, is unconstitutional under the holding of the United States Supreme Court in Blakely v. Washington
(2004), 124 S. Ct. 2531."
 {¶ 60} In this case, appellant's argument that he was sentenced to consecutive terms without the benefit of a jury making findings in violation of Blakely, supra, is devoid of merit, as appellant voluntarily waived his right to a jury trial.
 {¶ 61} Moreover, this court recently held in State v. Lett, Cuyahoga App. Nos. 84707 and 84729, 2005-Ohio-2665, that R.C. 2929.14(E), which governs the imposition of consecutive sentences, does not implicate the Sixth Amendment as construed in Blakely.
 {¶ 62} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 63} In his fifth and final assigned error, appellant maintains that:
 {¶ 64} "The trial court erred by imposing consecutive sentences when it failed to properly make findings required by R.C. 2929.14(E)(4) with reasons in support thereof."
 {¶ 65} In imposing consecutive prison terms for convictions of multiple offenses, the trial court must make certain findings enumerated in R.C. 2929.14(E)(4). According to this statute, a court may impose consecutive sentences only when it concludes that the sentence is (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the following applies: (a) the crimes were committed while awaiting trial or sentencing, under a community control sanction or under post-release control; (b) the harm caused by the multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. R.C. 2929.14(E)(4).
 {¶ 66} When the trial court makes these findings in support of imposing consecutive sentences, it must also state its reasons on the record why it made the findings pursuant to R.C. 2929.19(B)(2)(c). Statev. Gary (2001), 141 Ohio App.3d 194, 750 N.E.2d 640.
 {¶ 67} In this case, the trial court ordered the convictions for the aggravated burglary and the two counts of aggravated robbery to be served consecutively with each other and consecutively to the gun specification. In so sentencing appellant, the court stated the following:
 {¶ 68} "The reason that they are consecutive is because this court feels it's necessary to protect the public and to punish you for the nature of this offense, which I find to be so unusual as to dictate that a single term is not sufficient to reflect the seriousness of the offense.
 {¶ 69} "Further, with there being a repeat violent offender specification, all of the prison terms are mandatory according to the statute. And the consecutive nature, also the court finds it's because of the likelihood of you committing future offenses."
 {¶ 70} While the court did not recite the exact words of the statute in regard to the proportionately of consecutive terms, it is not required to state those "magic" or "talismanic" words in order to impose consecutive sentences upon an offender. See State v. Chaney, Cuyahoga App. No. 80496, 2002-Ohio-4020. In this case, the reasons stated on the record make it obvious that the consecutive sentences were not disproportionate to the seriousness of appellant's conduct and to the danger he poses to the public. Those reasons, stated by the trial court as required by R.C. 2929.19(B)(2)(c), were lengthy and exhaustive:
 {¶ 71} "It is absolutely incredulous that a person would wait 10, 11 months and hope that an event would happen to them so they can blame it on you. * * * I understand where you are coming from about what happened, what you say happened in prison. * * * But nobody is going to wait and hope they get robbed so they can say it was Ladon Williams. * * * No woman who has her baby duck (sic) taped to her is going to point to Ladon Williams and say it was you when it was somebody else. Trust me. * * * A mother would not point the finger at the wrong person who hurt her child in front of her face.
 {¶ 72} "* * *.
 {¶ 73} "So you can say all you want to say to me. There are certain things that came out in this testimony that only lead to one conclusion. And you can continue to deny and deny and deny, but I mean, there are certain things people just won't do. Mr. Taylor's best friend is not going to lie and say you are the one when it wasn't you. I'm sure he would have loved to have the guy who had the gun in his face so he can say, he's the one with the gun. They never said you had the gun. If Mr. Taylor wanted to get you, if [Nesbitt] wanted to, [Jarba] wanted to get you, they could say you had the gun. They never said that. You're an accomplice with the gun. But you're the one who orchestrated it, and you used your friendship with Mr. Taylor to facilitate it. And that's the only thing that makes sense. * * * So you can stand here and say all you want and deny all you want, but your other friend is here. So your other friend knows what happened in this case. You used your friendship to get into his house, bring your friends (sic) robbed his family, taped them up and went on your way. And it was so brazen because they know you. He knows your face, Mr. Taylor. And what that means to me is that this kind of thing can happen in the future. Because if you don't care that somebody knows you and you don't even bother to cover your face, then the likelihood of a future offense like this is very possible. And especially when you don't even consider any of, you know, I'm sorry I did it, whatever * * * lapse of judgment, whatever.
 {¶ 74} "It's offensive that you would duck (sic) tape this baby to the mother. I mean, that shows absolutely no kind of compassion whatsoever, to duck (sic) tape a baby."
 {¶ 75} As the trial court complied with the requirements of R.C.2929.14(E)(4) and 2929.19(B)(2)(c) in sentencing appellant to consecutive terms, his fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., and Kilbane, J., concur.
[1] Although appellant did not renew his Crim.R. 29 motion for acquittal after presenting evidence on his behalf, he did not waive all errors because this was a bench trial. See State v. Rankin (Mar. 5, 1980), Hamilton App. No. C-790142, citing Dayton v. Rogers (1979),60 Ohio St.2d 162, 398 N.E.2d 781.