OPINION
{¶ 1} Defendant-appellant, Nakisha Lane, appeals the judgment of conviction, following trial by jury, in the Lake County Court of Common Pleas, for one count of Complicity to Vandalism, a felony of the fifth degree, in violation of R.C. 2923.03(A)(2) and R.C. 2909.05. We affirm the decision of the trial court.
 {¶ 2} On March 27, 2004, an employee of the Argonne Arms Apartments, located in Painesville, Ohio, was sent to Building B of the complex to inspect two security cameras, which were believed to be dirty. Upon inspection of the second and third floor cameras, the employee discovered that the protective globes over the cameras had been burned. The employee subsequently returned to the surveillance room to see if she could ascertain exactly how and when the damage occurred.
 {¶ 3} Footage taken from the camera located on the third floor of Building B revealed that, at approximately 2:51 p.m., a lone male, later identified as Scotty Lewis, was standing in the hallway just under the camera, speaking on a cellular phone. The male then walked to the end of the hallway, and leaned over a railing, looking downward, while continuing to talk on the cell phone. Shortly thereafter, the male was observed walking up to the camera a second time and raising a lighter to the plastic camera housing, and burning it.
 {¶ 4} Footage taken from the cameras on the first and second floors of Building B revealed that at approximately 4:33 p.m., the same male walked up the steps from the hallway on the first floor toward the second floor followed by a woman, who was later identified by the employee at Argonne Arms as Lane. Lewis and Lane were then seen walking toward the second floor camera. Lewis, who, in a futile effort to disguise himself, covered his head with his t-shirt, "Cornholio" style, walked just out of the camera's range, while Lane is seen standing underneath the camera, staring upward. Lane then proceeded to walk toward the stairwell leading to the third floor.
 {¶ 5} As she moved toward the stairway leading to the third floor, Lane, who was initially looking back in Lewis' direction, turned and pointed toward the upper stairwell. While Lane started to climb the steps leading to the third floor, Lewis' hand appeared with the lighter and began burning the second floor camera housing. While this occurred, Lane's feet were facing the outside wall between the second and third floors, where a window was located. At one point, Lane's foot left the ground, as if to lean more closely toward the window. After burning the camera housing, Lewis can be seen through an unburned portion of the lens cover, walking toward the foot of the third floor steps. Lane then started walking down the stairs to meet Lewis. Lewis removed the shirt from over his head and pointed back, directing Lane's attention toward the camera. Lane then walked back down the steps toward the camera, looking up to inspect it, before circling out of view and following Lewis back toward the first floor.
 {¶ 6} A few days after reviewing the footage from the security cameras, a complaint was filed with the Painesville Police Department. Police subsequently questioned Lane about the incident. After initially denying that she knew Lewis personally, and identifying him only by his nickname, Lane finally relented, and gave the police Lewis' name. In Lane's statement to police, she claimed to have followed Lewis to observe the camera on the second floor after he told her he had burned a camera in the building earlier in the day. Lane also told police that she had no prior knowledge that Lewis was going to burn, or as she told police, "re-burn" the second floor camera.
 {¶ 7} On June 25, 2004, Lane was indicted on two counts of Complicity to Vandalism, a fifth-degree felony in violation of R.C. 2923.03(A)(2) and R.C. 2909.05. Count One involved the physical harm of property used by the owner in the owner's profession, trade, business, or occupation, the replacement or repair value of which is more than five hundred dollars. In the alternative, the second count involved physical harm to the same property, but a finding that the property was "necessary for its owner or possessor to engage in the owner's profession, business, trade or occupation." R.C. 2909.05(B)(1)(b). On July 9, 2004, Lane waived her right to be present at her arraignment, and the trial court entered a plea of "not guilty" on her behalf.
 {¶ 8} On October 4, 2004, the matter proceeded to jury trial. At the close of the State's case, Lane's counsel made a Crim.R. 29 motion for acquittal, which was denied. The jury subsequently returned a guilty verdict on Count One, and found Lane not guilty on Count Two. With respect to Count One, the jury returned a specific finding that the cost of repair to the camera was in excess of $500. On November 23, 2004, Lane was sentenced to serve sixty days in the Lake County Jail, with credit for four days served, given two years of community control sanctions, and was ordered to pay restitution in the amount of $523 for the victim's monetary loss.
 {¶ 9} Lane timely appealed, raising four assignments of error:
 {¶ 10} "[1.] The trial court erred to the prejudice of defendant-appellant in denying her motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 11} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 12} "[3.] The trial court erred in failing to consider applicable taxes when determining the value of the damaged property.
 {¶ 13} "[4.] The trial court erred to the prejudice of the defendant-appellant in failing to adopt her proposed jury instructions."
 {¶ 14} In the interest of judicial economy, Lane's assigned errors will be discussed out of order. Since assignments of error one and three challenge the sufficiency of the State's evidence, they will be discussed together.
 {¶ 15} A challenge to the sufficiency of the evidence raises a question of law; thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee
(Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). The relevant inquiry when testing the sufficiency of the evidence is whether, after reviewing the evidence and the inferences reasonably drawn from it in the light most favorable to the prosecution, any rational trier of fact could find all elements of the offense proven beyond a reasonable doubt. State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d, 335, 345, 2001-Ohio-57;State v. Wallen (1969), 21 Ohio App.2d 27, 35.
 {¶ 16} In her first assignment of error, Lane argues that the charge against her for Complicity to Vandalism in Count One should have been dismissed because the State presented insufficient evidence that she acted to "aid and abet" Lewis in the commission of the vandalism.
 {¶ 17} In order to prove complicity to vandalism under Count One, the state was required to produce evidence that Lane acted knowingly to "aid and abet another" in "caus[ing] physical harm to property that is owned or possessed by another, when * * * [t]he property is used by its owner or possessor in the owner's * * * business * * *, and the value of the property or the amount of physical harm involved is five hundred dollars or more." R.C.2923.03; 2909.05(B)(1)(a). Lane argues that the state failed to meet its burden, since the videotape and testimony demonstrated no more than her mere presence during the burning of the second floor camera. We disagree.
 {¶ 18} For purposes of the R.C. 2923.03 "`aid and abet'" means "to assist or facilitate the commission of a crime, or to promote its accomplishment." State v. Johnson,93 Ohio St.3d 240, 243, 2001-Ohio-1336, citing Black's Law Dictionary (7 Ed.Rev. 1999) 69. This court has stated that mere presence of the accused at the scene of the crime is not enough, "[r]ather the state must establish that the offender `took some affirmative action to assist, encourage, or participate in the crime by some act, deed, word, or gesture.'" State v. Sims, 11th Dist. No. 2001-L-081, 2003-Ohio-324, at ¶ 44 (citations omitted).
 {¶ 19} A review of the video footage from the first and second floor cameras reveals that the state presented sufficient evidence to establish that Lane was complicit to Lewis' vandalism of the second floor camera. The video showed Lane following Lewis from the first floor to the second, after Lewis attempted to disguise himself. Both Lane and Lewis stopped underneath the camera and looked up at the lens. While Lewis stood out of the view of the camera, Lane began walking away from the camera, and pointed in the direction of the third floor stairwell. As Lewis started to set fire to the camera's globe, Lane can be seen climbing the steps to the landing between the second and third floors. While Lewis continued to burn the globe, Lane's feet can be seen facing away from the hallway, towards the window. At one point, Lane's right foot left the floor, as if to get a better view outside the building. When Lewis finished burning the camera globe, he headed toward the stairwell and can be seen saying something to Lane and pointing back toward the camera. Lane then followed Lewis back toward the camera to inspect it before heading down the stairs toward the first floor.
 {¶ 20} "[A]iding and abetting may be demonstrated by direct or circumstantial evidence and can be inferred from `presence, companionship and conduct before and after the offense is committed.'" State v. Williams, 8th Dist. No. 85327,2005-Ohio-3715 at ¶ 20 (citation omitted). "It can also be established by overt acts of assistance such as * * * serving as a lookout." Id. (Citation omitted). Viewing the video evidence in a light most favorable to the prosecution, the jury could reasonably conclude that Lane assisted Lewis in the vandalism of the second floor camera by serving as a lookout, while Lewis committed the act. Lane's first assignment of error is without merit.
 {¶ 21} Lane's third assignment of error likewise challenges the sufficiency of the evidence under another guise: that the State failed to prove that the value of repairs to the camera exceeded $500.
 {¶ 22} R.C. 2909.11 provides the rules to determine the value of physical harm to property that has been vandalized. R.C.2909.11(B)(2) states "[i]f * * * the physical harm is such that the property can be restored substantially to its former condition, the amount of physical harm involved is the reasonable cost of restoring the property."
 {¶ 23} At trial, the prosecution introduced evidence of the repair bill for the cameras from North Coast Solutions. The total amount of the bill was $1,097, of which $922 was materials and $175 was labor. The service representative who repaired the camera housings testified that he was called out to Argonne Arms on April 9, 2004, to repair the camera housings and to inspect the magnetic locks on the exterior doors of two other buildings. The service representative stated he spent less than half an hour inspecting the doors, for which he estimated approximately $50 was for labor, based upon the cost of a separate service call. The service representative additionally testified that he worked approximately one and one-half hours replacing the two camera housings, taking approximately the same amount of time to repair each. Thus, the total amount of labor and materials attributable to both cameras was $1,047, divided equally between each, for a total of $523.50. The invoice did not indicate the amount of taxes charged.
 {¶ 24} Relying on State v. Adams (1988), 39 Ohio St.3d 186,187, which held that "sales tax shall not be included in the determination * * * of * * * replacement cost," Lane argues that the State failed to sustain its burden, since the only evidence produced proved the total amount paid to the service company for the repair, but could not demonstrate what portion of the total bill was for parts and labor, and which portion of the total amount was tax. Lane's reliance on Adams is misplaced.
 {¶ 25} In Adams, the defendant was charged with felony theft of a radar detector. The list price of the radar detector at the time of the offense was $295, while the applicable sales taxes brought the cost to $311.23, barely above the $300 threshold for felony theft. The Supreme Court held that, under R.C. 2913.61, sales tax "shall not be included in the determination * * * of the replacement cost of stolen personal effects and household goods." Id. The Court arrived at this conclusion "because the sales tax is subject to numerous exemptions, and is thus not an automatic addition to every sale of personal goods," and, therefore, including sales tax in the computation of the value of stolen property would result in inconsistent application of the statute prohibiting the receipt of stolen property in violation of the Ohio Constitution.
 {¶ 26} Contrary to Adams, where the offense involved a discrete item of property, the instant case involved a repair of a business fixture, which involved both material and labor costs. Evidence and testimony established that the cost attributable to the repair of the second floor camera was $523, based upon half of the repair amount applicable to the two cameras, since an equal amount of time was spent repairing each. The repair invoice contained separate amounts for parts and labor applicable to the cameras, but did not indicate that any taxes were charged to Argonne Arms as part of the repair. Although testimony was presented that Argonne Arms was not a tax-exempt entity, the repair bill was prima facie evidence of the reasonable value of the cost of the repairs.
 {¶ 27} Under R.C. 2909.11, the jury is responsible for determining the amount of physical harm to the property, and must return a finding of the value as part of their verdict. However "it is unnecessary [for the jury] to find or return the exact value or amount * * *." R.C. 2909.11(A). A reviewing court will not reverse a conviction where there is substantial evidence upon which a jury could conclude that all of the essential elements of the offense have been proven beyond a reasonable doubt. State v.Seiber (1990), 56 Ohio St.3d 4, 13 (citation omitted); State v.Rooker (Jul. 16, 1991), 4th Dist. No. 463, 1991 Ohio App. LEXIS 3463 at *4 (appeals court upheld conviction for felony vandalism solely on the basis of the repairman's testimony as to the amount of time spent making the repairs and the minimum rate his employer charged for his time). Based upon the record, there was ample evidence by which a reasonable jury could conclude the reasonable cost of restoring the camera was in excess of $500. Lane's third assignment of error is without merit.
 {¶ 28} In her second assignment of error, Lane claims that her conviction was against the manifest weight of the evidence, since the State failed to prove her involvement in the act beyond her mere presence at the scene. Again, we disagree.
 {¶ 29} Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. The concepts of sufficiency of the evidence and manifest weight of the evidence are distinct. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." Schlee,
1994 Ohio App. LEXIS 5862, at *13. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass, (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony." Tompkins,78 Ohio St.3d at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook J., concurring).
 {¶ 30} "A finding on review that the jury's verdict was against the manifest weight of the evidence must be reserved for those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable jury could have found the defendant guilty." State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175.
 {¶ 31} As mentioned earlier, the video reveals that Lane followed a poorly disguised Lewis to the second floor to observe the camera before retreating toward the stairwell. Rather than retreating to her apartment on the first floor, she climbed the steps to the landing between the second and third floors and waited facing the window, and returned to the second floor only when Lewis walked to the foot of the steps and summoned her. Instead of returning to the first floor immediately, Lane walked back toward the camera on the second floor to look at it again before returning to her apartment. Contrary to Lane's assertion that she had no idea that Lewis was going to "re-burn" the camera, the lens appeared clear when she first walked up to the globe to inspect it, and was only obscured after Lewis set fire to it. Finally, there was testimony that when Lane was first asked the name of the man who burned the cameras, she denied knowing it, and then eventually relented. As stated earlier, "[t]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." DeHass,10 Ohio St.2d 230, at paragraph one of the syllabus. Based upon the record and the evidence before us, we cannot say the jury erred in accepting the prosecution's version of events over that of Lane. Lane's second assignment of error is without merit.
 {¶ 32} In her fourth assignment of error, Lane argues that the trial court erred in failing to adopt her proposed jury instructions. Specifically, Lane argues that the trial court erred by failing to include her proposed jury instruction on the definition of "complicity," which included an instruction that, in order for one to be complicit to the commission of a crime, the defendant must have knowledge of, and consent to, the criminal design or purpose prior to the commission of the offense. Lane additionally objects to the trial court's use of the word "association" in the jury instructions as being inconsistent with applicable case law. We disagree.
 {¶ 33} Generally speaking, a trial court commits prejudicial error by failing to give a proposed jury instruction when (1) the instruction is relevant to the facts of the case, (2) the instruction gives a correct statement of relevant law, and (3) the instruction is not covered in the general charge to the jury.Mentor v. Hamercheck (1996), 112 Ohio App.3d 291, 296; Statev. Singleton, 11th Dist. No. 2002-L-077, 2004-Ohio-1517, at ¶ 36.
 {¶ 34} An examination of the jury instruction given by the court reveals that the trial judge instructed the jury consistent with Lane's proffered instruction, even though he did not adopt the specific language proposed. Specifically, the court provided the jury with the statutory definition of "knowledge" and then instructed the jury as follows: "To establish that a defendant acted as an aider and abettor * * * the prosecution must demonstrate beyond a reasonable doubt that the accused knowingly aided, helped, supported, assisted, strengthened, encouraged, cooperated with, advised, incited, or directed or associated herself with another, or otherwise participated as an accomplice, however slight, preceding it's occurrence * * *." We conclude that this instruction adequately communicated the applicable legal principles.
 {¶ 35} We likewise reject Lane's claim that the trial court's use of the word "association" in the instructions was contrary to applicable case law. The instructions given specifically stated that "[m]ere presence is not sufficient to make [Lane] an accomplice. She must have done something more. She must have supported, assisted, encouraged, cooperated with, advised, or incited the other person to do the criminal act in one of the ways that I have already mentioned." A trial judge is not required to deliver the precise instruction proffered by the party, regardless of its legal propriety, pertinence, or timeliness, so long as the substance of the requested instruction is fairly conveyed in the charge given to the jury. State v.Oswalt (Jan. 27, 1982), 1st Dist. No. C-810134, 1982 Ohio App. LEXIS 14712, at *2, citing State v. Guster (1981),66 Ohio St.2d 266, at syllabus; Akron v. Williams (Dec. 14, 1988), 9th Dist. No. 13508, 1988 Ohio App. LEXIS 4983, at *4. Such was the case here. Accordingly, Lane's fourth assignment of error is without merit.
 {¶ 36} For the foregoing reasons, we affirm the judgment of the Lake County Court of Common Pleas.
Rice, J., concurs.
O'Toole, J., dissents.