JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant appellant James Dzelajlija appeals his conviction and sentence from the Cuyahoga County Court of Common Pleas. We affirm in part, and reverse in part and remand for resentencing.
 {¶ 2} Appellant was charged in two cases, which were consolidated for trial. Appellant was found guilty in one case, and not guilty in the other.
 {¶ 3} At trial, the victim, Julia Russell, testified that she worked at Movie Gallery on State Road in Parma as a manager for ten years. On November 21, 2005, the victim was working at the store alone when appellant walked in and began looking for a movie. The victim asked him if he needed anything, to which appellant replied, "No." The victim testified that she began to walk out from behind the counter when appellant stood in front of her. Appellant stated that there was something she could do for him, give him all the money.
 {¶ 4} The victim walked over to the cash register, and appellant followed her behind the counter. He stood between the victim and the exit. She asked appellant if he wanted the change too, to which he replied, "No." She gave him the money, and he walked out from behind the counter and ran down a side street.
 {¶ 5} The victim testified that when appellant demanded the money, she could see the butt of his gun coming out of his pocket. The victim testified that appellant was holding the butt of the gun with one hand and his other hand was in his pocket. She testified that appellant's hand never left the gun during the robbery. *Page 4 
She stated that appellant was very calm and acted as if it was an "everyday occurrence."
 {¶ 6} The victim testified that she got a good look at appellant and that he had blue eyes. She stated that he wore a baggy, red hooded sweatshirt and a tan knit cap. Appellant also wore nylon black pants with a white stripe down the side.
 {¶ 7} After appellant left, the victim called the police and gave them a description of the robber. She testified that a half hour later, she was taken by the police to another location where she identified appellant. The victim stated that she was absolutely sure that he was the one who robbed her. She testified that at the time of the identification, appellant was still wearing the black pants with the white stripe but did not have the sweatshirt on.
 {¶ 8} Emily Paul testified that she was walking home from school with her younger sister and little brother and noticed a male in a red sweatshirt go into the movie store. In addition, across the street she saw a male sitting in a red car in the driver's seat acting suspicious. Paul testified that she saw the male with the red sweatshirt run back to the car and watched the car speed away. Paul testified that she thought the driver was looking at her little brother, so her sister wrote down the license plate. While they continued to walk home, a police officer stopped them and spoke to them. Paul described what she saw and gave the officer the license plate number. *Page 5 
 {¶ 9} Officer Dean Leon from the Parma Police Department testified that he responded to an aggravated robbery at the Movie Gallery. In route, he observed children walking in the area and questioned them. He obtained a description of the vehicle and the license plate number. It was determined that they were looking for a red Ford Mustang registered to Debra Dzelajlija.
 {¶ 10} Within a half hour, while touring for the suspect, Officer Leon observed a vehicle matching the description and pulled appellant over. Appellant matched the description of the robbery suspect. He was wearing black pants with a stripe down the side, but he was wearing a white T-shirt. After the victim identified appellant as the person who robbed her, appellant was arrested.
 {¶ 11} Officer Edward Pinc from the Parma Police Department testified that he responded to the Movie Gallery and spoke with the victim. He received a description of the suspect and viewed the surveillance video, which showed the suspect's clothing. Officer Pinc collected the video and entered it into evidence. After appellant was pulled over, Officer Pinc took the victim to identify the suspect.
 {¶ 12} Debra Dzelajlija testified that she was out of town for a few days, and when she returned, she discovered that her Mustang was missing. Debra testified that appellant is her stepson and did not have permission to drive her car because he did not have a license.
 {¶ 13} Robert Jones, appellant's co-defendant, testified that he has known appellant since kindergarten. Jones testified that he pled guilty to aggravated *Page 6 
robbery with an agreement to testify truthfully. Jones testified that on the day of the robbery, appellant showed up at his apartment driving his stepmother's Mustang. Appellant asked Jones if he would "drive for him," which Jones took to mean appellant was asking him to be his getaway driver. Jones testified that appellant was wearing a red hooded sweatshirt and black pants with a stripe down the side. They drove around Parma pointing out places to rob.
 {¶ 14} Eventually, appellant told Jones to stop at the plaza with the video store. Appellant got out of the car while Jones remained in the car with it running. Jones testified that he watched the kids walking home from school. Meanwhile, appellant returned to the car and was breathing heavily and screaming, "Go, go, go!" Jones drove off down the street. Jones testified that appellant bragged about robbing the video store but said it was a "shitty ass lick" because he got only approximately $130. They drove back to Jones's place, and appellant gave Jones $30 for driving. Appellant took off his sweatshirt and gave it to Jones to hold for him. Inside the sweatshirt was one of Jones's prop guns, which Jones described as looking realistic.
 {¶ 15} Jones saw appellant on the news and found out that the police were looking for the getaway driver. Jones went to the police and made a statement. At first, Jones told police he was not involved, but eventually he told police what he knew, including that appellant had bragged to Jones about other places he had robbed. Jones described a few of those incidents to the police. Jones turned over appellant's sweatshirt and the gun. *Page 7 
 {¶ 16} Appellant contacted Jones from jail to make sure Jones had disposed of the clothing. In addition, appellant pleaded for Jones to retract his statement.
 {¶ 17} Appellant was found guilty of aggravated robbery, kidnapping, and unauthorized use of a motor vehicle. Appellant was found guilty by the court of the repeat violent offender specification, and notice of prior conviction. He was sentenced to ten years for the aggravated robbery, three years for the kidnapping, and six months for the unauthorized use of a motor vehicle. The sentences were ordered to run concurrent to each other.
 {¶ 18} Appellant appeals, advancing four assignments of error for our review. His first assignment of error states the following: "There was insufficient evidence to convict appellant of the charges."
 {¶ 19} Under this assignment of error, appellant argues that there was insufficient evidence to sustain a conviction for aggravated robbery because there was no evidence that appellant displayed the gun or that the victim felt threatened by a gun. Appellant also argues that there was insufficient evidence to convict him of kidnapping because there was no testimony that the victim was threatened, deceived, or restrained of her liberty.
 {¶ 20} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, *Page 8 104 Ohio St.3d 54, 67, 2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 21} R.C. 2911.01 Aggravated Robbery provides as follows:
 "(A) No person in attempting or committing a theft offense, as defined in Section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 22} R.C. 2905.01 Kidnapping provides as follows:
 "(A) No person, by force, threat or deception shall remove another from the place where the other person is found or restrain the liberty of the other person, for the following purposes:
 "* * *
 "(2) To facilitate the commission of a felony or the flight thereafter."
 {¶ 23} In this case, the victim, Russell, testified that appellant had the butt of a gun sticking out of his pocket and that his hand was on the gun. Russell testified that she was scared, and she thought that he would harm her if she did not comply. The appellant clearly displayed the weapon and indicated that he possessed it, while demanding the money from the victim. *Page 9 
 {¶ 24} As to the kidnapping, Russell testified that appellant followed her behind the counter and stood less than a foot away from her while she retrieved the money. Appellant was blocking her exit. By blocking her exit and displaying the gun, appellant restrained the victim of her liberty.
 {¶ 25} After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of aggravated robbery and kidnapping proven beyond a reasonable doubt. Accordingly, appellant's first assignment of error is overruled.
 {¶ 26} Appellant's second assignment of error states the following: "The conviction of appellant is against the manifest weight of the evidence."
 {¶ 27} Appellant argues that the state's primary witness, co-defendant Jones, was not credible, and therefore appellant's conviction is against the manifest weight of the evidence.
 {¶ 28} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial *Page 10 
ordered." State v. Leonard, 104 Ohio St.3d 54, 68, 2004-Ohio-6235
(internal quotes and citations omitted).
 {¶ 29} Here, Jones testified that appellant committed the robbery at the Movie Gallery and that he was the getaway driver. Jones also testified that appellant gave Jones his sweatshirt and the gun he used to commit the robbery, which was eventually turned over to police. Finally, Jones testified that appellant bragged about several other robberies that he had previously committed.
 {¶ 30} Jones's testimony was incidental to the victim, Russell's testimony, and the videotape of the robbery. Russell was able to describe and identify the appellant and his actions. Further, other witnesses corroborated Jones's testimony.
 {¶ 31} After examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the jury clearly lost its way. Appellant's conviction was not against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
 {¶ 32} Appellant's third assignment of error states the following: "The trial court erred in failing to merge the kidnapping charge as an allied offense of similar import."
 {¶ 33} R.C. 2941.25, provides the following:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the *Page 11 indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 34} In State v. Logan (1979), 60 Ohio St.2d 126, syllabus, the Ohio Supreme Court adopted the following guidelines to establish whether kidnapping and another offense of the same or similar kind are committed with a separate animus pursuant to R.C. 2941.25(B):
 "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;"(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."
 {¶ 35} Kidnapping and aggravated robbery are allied offenses of similar import where the restraint of the victim is merely incidental to the crime of robbery. Id. at 130-131; State v. Fears, 86 Ohio St.3d 329,344, 1999-Ohio-111; State v. Taogaga, 165 Ohio App.3d 775,2006-Ohio-692; State v. Jones (Dec. 10, 1992), Cuyahoga App. No. 61279;State v. Burks (Aug. 21, 1991), Cuyahoga App. No. 58975. *Page 12 
Kidnapping is separate and distinct from the crime of aggravated robbery where the kidnapping protrudes from the facts of the case and, in such case, a separate animus is thus established. Taogaga, supra, citingJones, supra.
 {¶ 36} In the instant case, there is no evidence to show that the victim was moved from the Movie Gallery or was subjected to a greater risk of harm beyond that already created by the factors involved in the commission of the aggravated robbery. See Taogaga, supra. InLogan, supra, the court stated that "when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery." See, also,State v. Jenkins (1984), 15 Ohio St.3d 164 (holding that implicit within every aggravated robbery is a kidnapping). The Logan court further noted "without more, there exists a single animus, and R.C. 2941.25 prohibits convictions for both offenses." Logan, supra at 132. In State v.Cabrales, 2008-Ohio-1625, the Supreme Court of Ohio explained that R.C.2941.25 essentially codified the judicial merger doctrine, which is "the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime." Id., citingMaumee v. Geiger (1976), 45 Ohio St.2d 238, 243-244.
 {¶ 37} We find that under the facts of the instant case, the kidnapping and aggravated robbery were committed with a single animus. Although the record shows that the victim walked a few feet to the register, the entire incident lasted no *Page 13 
more than a few minutes. Compare, State v. Stadmire, Cuyahoga App. No. 81188, 2003-Ohio-873 (victim restrained for four hours and driven from place to place); State v. Williams, Cuyahoga App. No. 85237,2005-Ohio-3715 (act of binding the victims and leaving them to free themselves was not merely incidental to the robberies but had a significance independent of the robberies); State v. Jones (Dec. 10, 1992), Cuyahoga App. No. 61279, (taping up the victims produced restraint, which was greater than that necessary to effectuate the aggravated robbery). Although the evidence showed that appellant stood between the victim and the exit, forcing her back to the register, we find that such limited movement of the victim was incidental to the separate underlying crime of aggravated robbery. See Jenkins, supra at 198.
 {¶ 38} Thus, we find no separate animus to independently support the conviction for kidnapping. The kidnapping offense should have merged into the aggravated robbery conviction pursuant to R.C. 2941.25.
 {¶ 39} Although defense counsel failed to raise the issue at the trial court level, "where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25. Thus, "it is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently." State v.Sullivan, Cuyahoga App. No. 82816, 2003-Ohio-5930; State v.McSwain, Cuyahoga App. No. 83394, *Page 14 2004-Ohio-3292. Therefore, the trial court should have merged the convictions for the two offenses rather than impose concurrent sentences. State v. White, Cuyahoga App. No. 88491, 2007-Ohio-3080. Accordingly, appellant's third assignment of error is sustained.
 {¶ 40} Appellant's fourth assignment of error states the following: "The trial court abused its discretion in permitting the videotape to be played for the jury."
 {¶ 41} Appellant argues that the state failed to prove a proper chain of custody and failed to prove authenticity of the videotape. Appellant asserts that the videotape was inadmissible.
 {¶ 42} It has long been held that trial courts enjoy broad discretion in admitting or rejecting evidence. State v. Long (1978),53 Ohio St.2d 91, 98.
 {¶ 43} Evid.R. 901(A) states the following: "(A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The rule continues, explaining that testimony of a witness with knowledge that a matter is what it is claimed to be conforms with the requirement of the rule. Evid.R. 901(B)(1). The proponent must present foundational evidence or testimony from which a rational jury may determine that the evidence is what it is claimed to be.
 {¶ 44} In State v. Arafat, Cuyahoga App. No. 85847, 2006-Ohio-1722, the defendant argued that the state should have been compelled to use the original *Page 15 
videotape because the copy used at trial was altered. This court stated the following:
 "We acknowledge that the video played for the jury was altered in that Det. Klein took the images from the various volumes and put them in chronological order. The video was also modified through a process called padding, wherein duplicate images are inserted between the photos taken by the security cameras at set intervals, in order to create a final product that approximates real time viewing. * * * we find nothing about either of these processes which renders the video unreliable, and we also note that Det. Drake testified that the tapes prepared by Det. Klein were true and accurate copies of the security camera images."
 {¶ 45} In this case, some confusion arose over a copy of a videotape that was marked as State's Exhibit 1. Defense counsel raised an objection to this videotape on the grounds that it was identified as an "exact copy" when no testimony supporting its creation was offered. Nevertheless, State's Exhibit 1 was not entered into evidence, rather it was withdrawn by the state. In fact, the transcript reveals the videotape viewed and recovered by Officer Pinc from the scene was actually marked as State's Exhibit 2. This tape was identified by Officer Pinc during trial. At trial, Captain Cornachio testified that the laptop DVD played at trial was made from the original videotape marked as State's Exhibit 2. Captain Cornachio testified that nothing was done to alter the DVD.
 {¶ 46} State's Exhibit 2 was the original videotape taken from the security camera. It was entered into evidence without objection. State's Exhibit 11 was a copy of the original videotape, which was put into DVD format to play for the jury. It *Page 16 
was entered into evidence without objection. We find that sufficient evidence was provided to conclude that the videotape and the DVD copy was what the state purported it to be, namely, a recording of the aggravated robbery and kidnapping at the Movie Gallery.
 {¶ 47} Appellant also argues as an additional reason for the inadmissibility of the tape that the testimony did not establish a complete chain of evidence. Breaks in the chain of custody do not affect admissibility of evidence but only the weight afforded it. State v.Strickland (Jan. 8, 1992), Medina App. No. 2011.
 {¶ 48} Here, the videotape was taken from the scene, entered into evidence, retrieved by the captain and copied to a DVD, taken to court, and played for the jury. We find that even if there were breaks in the chain of custody, the tape was properly admitted at trial, letting the jury decide the weight to be given the recording. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 49} Judgment is affirmed in part and reversed in part, and case remanded for resentencing.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 17 
 MARY EILEEN KILBANE, J., and ANN DYKE, J., CONCUR. *Page 1