DECISION AND JUDGMENT ENTRY
{¶ 1} Charles Robert Davis appeals his convictions for aggravated trafficking in drugs, aggravated possession of drugs, and receiving stolen property following his guilty plea. He contends that he did not voluntarily enter his guilty plea for several reasons. He claims that (1) the charges were inaccurate, (2) the "indictment was wrought with errors," (3) at the plea hearing and in the court's guilty plea entry, the trial court incorrectly referred to count twenty-five as aggravated trafficking in drugs when it should have been aggravated possession of drugs, (4) the indictment and the state's discovery responses fail to explain why the amount of drugs involved equaled or exceeded five times the bulk amount, and (5) his counsel failed to advise him that the state failed to present evidence that showed he possessed or trafficked in an amount *Page 2 
of drugs equal or exceeding five times the bulk amount. Because Davis pled guilty, he waived the arguments relating to the accuracy of the charges and the indictment and the quality of the state's evidence. However, at no time during the plea proceedings did anyone advise Davis that he actually was pleading guilty to aggravated possession of drugs. Misstatements regarding the name of offense contained in count twenty-five permeate the plea proceedings, and, thus, there is no way of knowing whether Davis had an understanding of the nature of the charge against him. In the absence of such an understanding, we cannot say Davis knowingly pled guilty to count twenty-five. Thus, we vacate his guilty plea to aggravated possession in drugs as charged in count twenty-five of the indictment.
 {¶ 2} Next, Davis argues that he did not receive effective assistance of counsel. He asserts that counsel was ineffective for the following reasons: (1) counsel failed to investigate the offenses; (2) counsel failed to inform him of the alleged errors and contradictory information in the indictment and in the state's discovery responses; (3) counsel did not inform him that the state omitted drug quantities from the indictment that affected the degree of the felonies; and (4) counsel did not advise him that he was pleading guilty to the wrong offense, i.e., aggravated trafficking in drugs instead of aggravated possession of drugs. With the exception of the issues relating to count twenty-five, all the matters raised here require consideration of evidence outside the record. Thus, they cannot form the basis of a direct appeal. And our decision concerning county twenty-five *Page 3 
in the first assignment of error renders the issue of ineffective assistance of counsel on that matter moot.
 {¶ 3} Davis next contends that the trial court erred by imposing a sentence that is excessive due to his lack of a criminal history and due to his standing in the community. The trial court did not abuse its discretion. The trial court cited valid reasons for imposing Davis's sentence, i.e., spreading drugs into the community and inducing others to steal vehicles, and considered the appropriate statutory factors, R.C. 2929.11 and 2929.12. However, because we vacate Davis's plea to aggravated possession in drugs, we also vacate his sentence for that offense.
 {¶ 4} Accordingly, we partially sustain Davis's first assignment of error and overrule the remainder of his first assignment of error and his two other assignments of error.
 I. FACTS {¶ 5} The Highland County Grand Jury returned a multiple-count, drug-related indictment against Davis and eleven other defendants. The indictment charged Davis with (1) engaging in a pattern of corrupt activity, (2) two counts of receiving stolen property, (3) four counts of aggravated trafficking in drugs, fourth degree felonies, (4) aggravated trafficking in drugs, a second degree felony, (5) trafficking in counterfeit controlled substances, (6) aggravated possession of drugs, a third degree felony, (7) aggravated trafficking in drugs, a third degree felony, and (18) possession of drugs, a fifth degree felony. *Page 4 
 {¶ 6} Davis subsequently agreed to plead guilty to (1) count eleven, receiving stolen property, (2) count seventeen, receiving stolen property, (3) count twenty-one, aggravated trafficking in drugs, a second degree felony, and (4) count twenty-five, aggravated possession of drugs, a third degree felony. The state dismissed the remaining charges.
 {¶ 7} At the plea hearing, the court asked Davis whether he understood the charges and whether he made the plea of his own free will. Davis stated yes. Davis stated no one threatened him, made him any promises in exchange for his guilty plea, or induced him to plead guilty, and that he understood that by pleading guilty, he made a complete admission of guilt. The court explained the penalties for the offenses.
 {¶ 8} Davis also signed a guilty plea form, which stated he understood that by pleading guilty, he waived (1) his right to a trial, where he could confront witnesses and where his attorney question witness and use the subpoena power, (2) his right not to testify, and (3) his right to have the state prove his guilt beyond a reasonable doubt. The form also recited that Davis was satisfied with his attorney's "advice and competence."
 {¶ 9} However, throughout the plea hearing and subsequent sentencing hearing, the prosecutor and the trial court mistakenly referred to count twenty-five as aggravated trafficking in drugs, a third degree felony. No one called this error to the trial court's attention until after sentencing. Davis's guilty plea and sentencing entries also incorrectly recite that count twenty-five is aggravated trafficking in drugs. *Page 5 
 {¶ 10} The court sentenced Davis to (1) five years in prison for the second-degree felony aggravated trafficking offense, (2) one year on count twenty-five, which the court incorrectly stated to be aggravated trafficking in drugs, instead of aggravated possession in drugs, and (3) one year on each of the receiving stolen property offenses. The court ordered his sentence for count twenty-five to run consecutive to his sentence for second-degree felony aggravated trafficking in drugs, and the sentences for the receiving stolen property offenses to run concurrent to his sentence for second-degree felony aggravated trafficking in drugs.
 {¶ 11} After Davis filed his notice of appeal, the court filed a "nunc pro tunc" entry stating that the plea entry and the sentencing entry incorrectly recited count twenty-five as aggravated trafficking in drugs when it should have read aggravated possession of drugs. The court thus "corrected" the two prior entries to reflect that Davis pled guilty to and was sentenced for aggravated possession of drugs in count twenty-five.
 II. ASSIGNMENTS OF ERROR {¶ 12} Davis raises the following assignments of error.
First Assignment of Error:
 Defendant-Appellant's plea of guilty was not made voluntarily.
 Second Assignment of Error:
 Defendant-Appellant was denied his rights of due process and of assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution because his trial counsel provided ineffective assistance. *Page 6 
 Third Assignment of Error:
 The trial court erred to the prejudice of Defendant-Appellant by imposing a sentence that is contrary to law.
 III. GUILTY PLEA {¶ 13} In his first assignment of error, Davis argues that he did not enter his plea voluntarily because (1) he "was charged with and pled guilty to charges that were inaccurate," (2) the "indictment was wrought with errors," (3) at the plea hearing and in the court's guilty plea entry, the trial court incorrectly referred to count twenty-five as aggravated trafficking in drugs when it should have been aggravated possession of drugs, (4) the indictment and the state's discovery responses fail to explain why the amount of drugs involved equaled or exceeded five times the bulk amount, and (5) his counsel failed to advise him that the state failed to present evidence that showed he possessed or trafficked in an amount of drugs equal or exceeding five times the bulk amount.
 {¶ 14} Davis contends that "the indictment was wrought with errors" for the following reasons: "In one cover sheet, Count 21 is listed as a felony of the second degree and Count 26 is listed as a felony of the third degree. On the second cover sheet attached to the main body of the indictment, both these Counts are listed as felonies of the fourth degree. This would be especially accurate for Count 26, as both the description in the indictment and in the State's Response to Discovery, describes the offense as selling or offering to sell Oxycontin in an amount less than bulk, a felony of the fourth degree under R.C.2925.03(C)(1)(a). However, the State's Response also lists that offense as a felony of the third degree which is confusing and erroneous. Also, Count 25 is *Page 7 
listed as a felony of the third degree; however, a review of R.C.2925.11(C)(1)(c) reveals that aggravated possession of drugs equal or exceeding 5 times bulk, as described in the indictment, is a felony of the second degree."
 {¶ 15} Davis asserts that the indictment and the state's discovery responses are "confusing and contradictory in that, in some cases, such as Counts 12, 15, 18, and 26, the amounts of drugs involved are measured by the weight. All involve less than bulk amounts, as bulk amounts of Oxycontin is 20 grams, with 5 times bulk being 100 grams. * * * Count 27 does not list or describe the amounts of drugs in any way. However, in other counts, such as Counts 21 and 25, no weight is given, just the number of tablets and their strength. There is no explanation as to why these amounts are bulk amounts or are equal to or exceed 5 times bulk amounts."
 {¶ 16} The crux of Davis's argument appears to be that due to the multiple errors that occurred in the indictment and plea process, he could not have knowingly pled guilty, especially to aggravated possession of drugs, as charged in count twenty-five. Davis further argues that the trial court improperly entered a nunc pro tunc entry to correct the guilty plea and sentencing entries to reflect that it found him guilty of and sentenced him for aggravated possession of drugs, instead of aggravated trafficking in drugs.
 A. GUILTY PLEA GENERALLY OPERATES AS WAIVER OF NON-JURISDICTIONAL DEFECTS {¶ 17} Davis waived the right to challenge the alleged defects in the indictment or the state's alleged failure to produce evidence showing that the amount of drugs involved equaled or exceeded five times the bulk amount but *Page 8 
less than fifty times the bulk amount. Generally, a defendant who pleads guilty or no contest waives all non-jurisdictional defects in the proceedings. See Crim.R. 11(B)(1); see, also, United States v.Broce (1989), 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 92; State v.Fitzpatrick, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, at ¶ 78, quoting Menna v. New York (1975), 423 U.S. 61, 62, 96 S.Ct. 241,46 L.Ed.2d 195, fn. 2. ("`[A] guilty plea * * * renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established.'").
 {¶ 18} In this case, Davis's guilty plea waived his right to challenge any alleged defects in the indictment or deficiencies with the state's evidence. See Stacy v. Van Coren (1969), 18 Ohio St.2d 188,248 N.E.2d 603; see, also, State v. Salter, Cuyahoga App. No. 82488,2003-Ohio-5652. His "guilty plea broke the chain of events which preceded it in the criminal process." State v. Miller (Oct. 2, 1996), Meigs App. No. 95CA10. As we stated in Miller: "By pleading guilty * * *, appellant waived any right in questioning the validity of his indictment on appeal. In effect, appellant induced the prosecution and the court to proceed upon the * * * indictment upon the basis that it was sufficient to charge an offense * * * *."
 {¶ 19} To the extent that Davis contends his counsel failed to advise him about the quantity and quality of the state's evidence, he must rely upon evidence outside the record. Thus, this challenge cannot form the basis for a direct appeal as we are restricted to matters that are apparent from the record. See State v. Cooperrider, 4 Ohio St.3d 226,228. *Page 9 
 {¶ 20} Accordingly, Davis may challenge only whether he voluntarily, knowingly, and intelligently entered his guilty plea.
 B. DAVIS'S PLEA TO AGGRAVATED POSSESSION OF DRUGS {¶ 21} Davis argues that he did not voluntarily, knowingly, and intelligently plead guilty to aggravated possession in drugs because the trial court and the prosecutor incorrectly referred to the charge during the plea proceedings as aggravated trafficking in drugs. He further appears to assert that the defect in the indictment, i.e., count twenty-five actually charged second-degree felony aggravated possession of drugs, frustrated his ability to knowingly plead guilty, because he did not have proper notice of the degree of offense with which the state charged him.
 (1) Plain Error {¶ 22} Because Davis never objected at the plea hearing to the trial court's reference to count twenty-five as aggravated trafficking in drugs, he waived all but plain error. See State v. Henson, Champaign App. No. 2002CA21, 2003-Ohio-4426, at ¶ 28 (applying plain error doctrine when defendant failed to object to trial court's misstatement of mens rea during guilty plea proceeding). Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A silent defendant has the burden to satisfy the plain-error rule and a reviewing court may consult the whole record when considering the effect of any error on substantial rights. United States v. Vonn (2002), 535 U.S. 55,59, 122 S.Ct. 1043, 152 L.Ed.2d 90. *Page 10 
 {¶ 23} For a reviewing court to find plain error, the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. See, e.g., State v. Noling, 98 Ohio St.3d 44, 56, 2002-Ohio-7044,781 N.E.2d 88; State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240; State v. Sanders, 92 Ohio St.3d 245, 257, 2001-Ohio-189,750 N.E.2d 90; State v. Hill, 92 Ohio St.3d 191, 200, 2001-Ohio-141,749 N.E.2d 274. Furthermore, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Landrum (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710; see, also, State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."`" Barnes,94 Ohio St.3d at 27, quoting United States v. Olano (1993), 507 U.S. 725, 736,113 S.Ct. 1770, 123 L.Ed.2d 508, quoting United States v. Atkinson (1936),297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555.
 (2) Crim.R. 11 {¶ 24} In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we must review the record to ensure that the trial court complied with both the constitutional and procedural safeguards contained within Crim.R. 11.State v. Kelley (1991), 57 Ohio St.3d 127, 128, *Page 11 566 N.E.2d 658 ("When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim.R. 11 have been followed."); see, also, State v. Carter (1979),60 Ohio St.2d 34, 396 N.E.2d 757. Under Crim.R. 11 (C)(2), the trial court shall not accept a guilty plea without first addressing the defendant personally and: "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *."
 {¶ 25} The purpose of Crim.R. 11(C) is "to convey to the defendant certain information so that he [or she] can make a voluntary and intelligent decision whether to plead guilty." State v. Ballard (1981),66 Ohio St.2d 473, 479-80, 423 N.E.2d 115. The trial court need not recite the exact language of Crim.R. 11(C) when informing a criminal defendant of his or her rights. Instead, we will affirm a trial court's acceptance of a guilty plea if the record reveals that the trial court engaged in a meaningful dialogue with the defendant and explained, "in a manner reasonably intelligible to that defendant," the constitutional rights the defendant waives by pleading guilty. Id., paragraph two of the syllabus.
 {¶ 26} A trial court's failure to adequately inform a defendant of his constitutional rights invalidates a guilty plea under a presumption that it was entered involuntarily and unknowingly. State v. Griggs,103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, at ¶ 12.
 (3) Nature of the Charge {¶ 27} Crim.R. 11(C)(2)(a) requires the trial court to explain to a defendant "the nature of the charge * * *." State v. Clark, Pickaway App. No. 02CA12, *Page 12 
2002-Ohio-6684 (overruled on other grounds by State v. White,103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393), citing State v. Johnson
(1988), 40 Ohio St.3d 130, 133, 532 N.E.2d 1295. A plea cannot be voluntary in the sense that it constitutes an intelligent admission that the defendant committed the offense unless the defendant received "`real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" Henderson v.Morgan (1976), 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108, quotingSmith v. O'Grady (1941), 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859; see, also, Fitzpatrick, at ¶ 56. Thus, a plea may be involuntary because the accused "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." Henderson, 426 U.S. at 645, at fn. 13.
 {¶ 28} Knowledge of the nature of the crime is more general than knowledge of the actual elements of the crime. State v. Philpott (Dec. 14, 2000), Cuyahoga App. No. 74392. In other words, although the defendant may not be able to outline each element of the crime, he knows the "circumstances of the crime." State v. Lane (Nov. 19, 1999), Ashtabula App. Nos. 97-A-0056, 97-A-0057, 97-A-0058. A familiarity with the facts alleged relating to each count of the crimes charged is enough to provide the defendant with knowledge of the nature of the crime.State v. Elofskey (May 6, 1994), Montgomery App. No. 13970. *Page 13 
 (4) Misstatements During Plea Proceedings {¶ 29} A trial court's misstatements regarding the nature of the charge during a plea hearing do not always invalidate a plea. Generally, the courts have upheld pleas even though the trial court supplied the defendant with incorrect information, mischaracterizations, or misstatements when the erroneous statement occurred in isolation or when the written plea agreement contained the correct information.
 {¶ 30} For example, in State v. Moorefield (Oct. 8, 1999), Champaign App. No. 99CA4, the written plea agreement cited the wrong statute for the defendant's passing bad checks violation. The agreement indicated that the defendant pled guilty to violating 2923.32(A)(1), which defines the offense of engaging in a pattern of corrupt activity, when he actually pled guilty to passing bad checks, in violation of R.C.2913.11. At no other point during the plea proceedings did the court or the prosecutor refer to the charge as anything other than passing bad checks.
 {¶ 31} The appellate court determined that the defendant voluntarily entered his guilty plea. The court explained: "The written plea agreement merely misstated the numerical section of the Revised Code which defines the offense of Passing Bad Checks. The error did not misstate the name or identity of the offense itself. Indeed, the oral plea colloquy * * * is unequivocal with respect to the charge to which Moorefield would enter a no contest plea, which was Passing Bad Checks, not Engaging in a Pattern of Corrupt Activity." *Page 14 
 {¶ 32} However, in State v. Patrick (Oct. 5, 1994), Montgomery App. No. 13954, the court of appeals vacated the defendant's guilty plea because the record failed to support the trial court's finding that he entered his plea with an understanding of the charges. At the plea hearing, the prosecutor recited the facts constituting the charge, but recited facts involving a different victim and a different offense. In vacating the defendant's guilty plea, the court explained: "It is entirely possible that [the defendant] understood very well the nature of the charge to which he was pleading guilty, and perhaps failed to notice that the prosecutor's recitation of facts involved a different victim and a different offense. However, that would be speculation on our part."
 {¶ 33} Throughout the entire plea hearing here, the trial court and the prosecutor repeatedly and incorrectly referred to count twenty-five as aggravated trafficking in drugs, instead of aggravated possession of drugs. Additionally, the written plea form incorrectly recites the offense as aggravated trafficking in drugs and also cites the aggravated trafficking in drugs statute. Nowhere in the record is there any indication that Davis was informed by his own counsel or the court that count twenty-five actually was aggravated possession in drugs. Not until Davis had filed his notice of appeal, did anyone recognize the error, which prompted the trial court to attempt to correct the error by filing a "nunc pro tunc" entry.
 {¶ 34} Davis apparently thought he was pleading to aggravated trafficking in drugs, a third degree felony. In reality, the charge was supposed to be aggravated possession of drugs, also a third degree felony. An aggravated *Page 15 
trafficking offense is defined as: "No one shall knowingly * * * [s]ell or offer to sell a controlled substance." R.C. 2925.03(A)(1). Aggravated possession is defined in R.C. 2925.11(A) as: "No person shall knowingly obtain, possess, or use a controlled substance." The degree of felony for both offenses is a third degree felony. R.C. 2925.03(C)(1)(c) ("Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated trafficking in drugs is a felony of the third degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree."); R.C. 2925.11(C)(1)(b) ("If the amount of drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense."). Both offenses carry essentially the same penalty, and, thus, one could argue that Davis did not suffer prejudice. However, as the United States Supreme Court stated in Henderson, a "`universally recognized requirement of due process'" is the requirement that the defendant receive "`real notice of the true nature of the charge against him.'" Henderson, 426 U.S. at 645, quotingSmith, supra. If a defendant does not have notice of the correct charge against him, then his due process rights are violated. Id. A violation of a defendant's due process rights is per se prejudicial, as it is a constitutional right. Cf. Bousley, 523 U.S. at 618-619 (recognizing that a guilty plea would be constitutionally invalid if the record shows that the defendant was not correctly advised of the charge). Thus, because the guilty plea proceedings do not support any inference that anyone ever informed *Page 16 
Davis that he would be pleading guilty to aggravated possession of drugs, not aggravated trafficking in drugs, he did not have adequate notice of the charge against him and his guilty plea is constitutionally invalid. Under the facts of this case, i.e., where the misstatements permeated the plea proceedings, we agree with Davis that he could not have knowingly, intelligently, and voluntarily pled guilty to aggravated possession in drugs. The court's error constitutes plain, prejudicial error.
 {¶ 35} Although appellant raises concerns about other charges in the indictment and claims that alleged defects in those charges prevented him from entering a voluntary plea, we note that the state dismissed all but one of the questioned charges, Count twenty-one, after appellant agreed to plead guilty. Appellant, however, does not explain how the minor irregularities involving Count twenty-one affected his decision to plead guilty to that charge. Moreover, our review of the record does not show that same prejudice that resulted from the trial court's acceptance of appellant's guilty plea to Count twenty-five.
 {¶ 36} Accordingly, we sustain Davis's first assignment of error as it relates to his guilty plea to count twenty-five. We overrule the remainder of his assignment of error.
 IV. INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 37} In his second assignment of error, Davis contends that trial counsel rendered ineffective assistance by failing to investigate the offenses and by failing to inform him of the alleged errors and contradictory information in the indictment and in the state's discovery responses. He asserts that counsel did *Page 17 
not inform him that the state omitted drug quantities from the indictment that affected the degree of the felonies. Davis additionally asserts that counsel's failure to advise him (or to object during the plea hearing) that he was pleading guilty to the wrong offense, i.e., aggravated trafficking instead of aggravated possession of drugs, constituted ineffective assistance of counsel.
 {¶ 38} "A defendant who pleads guilty waives the right to claim ineffective assistance of counsel on appeal, except to the extent that counsel's deficient performance caused the plea to be less than knowing and voluntary." State v. Persons, Meigs App. No. 02CA6, 2003-Ohio-4213, at ¶ 11; see, also, State v. Spates (1992), 64 Ohio St.3d 269, 272-73,595 N.E.2d 351; State v. Kelley (1991), 57 Ohio St.3d 127, 129,566 N.E.2d 658; State v. Jacobson, Adams App. No. 01CA730, 2003-Ohio-1201.
 {¶ 39} Most of the issues Davis raises in this assignment of error require consideration of evidence outside the record. Thus, they are not appropriate for review on direct appeal and if Davis has a remedy, it is by way of post-conviction relief. Moreover, since we have already reversed his conviction on count twenty-five, the effectiveness of his counsel on that matter is moot. Thus, we overrule the second assignment of error.
 V. SENTENCING {¶ 40} In his third assignment of error, Davis asserts that the trial court erred by imposing a sentence that is contrary to law. He contends that the sentence was excessive, given his lack of a criminal history and his strong ties to the community. *Page 18 
 {¶ 41} "[T]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." State v. Foster 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, at ¶ 100. However, in exercising their discretion, trial courts must still consider R.C. 2929.11 and R.C.2929.12 before imposing a sentence within the authorized statutory range. Id. at ¶ 105; see, also, State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1, at ¶ 38; State v. Elswick, Lake App. No. 2006-L-075, 2006-Ohio-7011, at ¶ 53 (stating that "[e]ven though trial courts are no longer required to make specific findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences on the record, R.C. 2929.11 and R.C. 2929.12 must still be considered when sentencing offenders").
 {¶ 42} Thus, we review a felony sentence under the abuse of discretion standard. Foster at paragraph seven of the syllabus. See, e.g.,State v. Pace, Medina App. No. 06CA74-M, 2007-Ohio-1354, at ¶ 7;State v. Duff, Licking 06CA81, 2007-Ohio-1294, at ¶ 6. "The term abuse of discretion * * * connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Montgomery (1991), 61 Ohio St.3d 410, 413,575 N.E.2d 167, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144. "`An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is manifestly disproportionate to the crime or the defendant.Woosley v. United States (1973), 478 F.2d 139, 147. * * * Where the severity of the sentence *Page 19 
shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's [sic] can reverse the sentence.Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of [a] sentence in a particular case.'" Elswick, at ¶ 49, quoting State v.Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823, at ¶ 56.
 {¶ 43} Here, the trial court convicted Davis of (1) aggravated trafficking in drugs, a second-degree felony, (2) aggravated possession of drugs, a third-degree felony, and (3) two counts of receiving stolen property, both fourth-degree felonies. R.C. 2929.14(A) authorizes a trial court to sentence a defendant to (1) two to eight years in prison for a second-degree felony, (2) one to five years for a third-degree felony, and (3) six to eighteen months for a fourth-degree felony. The trial court selected a sentence for each of the four offenses that fell within the statutory range. It sentenced appellant to (1) five years for the second-degree felony aggravated trafficking offense, (2) one year for the third-degree felony aggravated possession offense to be served consecutively to the aggravated trafficking offense, and (3) one year for each of the fourth-degree felony receiving stolen property offenses, to be served concurrently with the aggravated trafficking offense.
 {¶ 44} Nothing in the record suggests that the trial court imposed a sentence that is greatly disproportionate to Davis's crimes so as to "shock judicial *Page 20 
conscience." Simply because Davis lacks a significant criminal history and allegedly has strong ties to the community does not mean that his six year total prison sentence is excessive. The trial court gave these reasons for imposing the sentence:
 "* * * [I]n sentencing a couple of things in [Davis's] favor[.] * * * [H]e pled guilty, which at least is a request for mercy, and I will consider that. However, I also have to consider something the Prosecutor has point[ed] out that his activities involve not just him but a large number of people spreading drugs in this community and encouraging the theft of vehicles for the sale of stolen vehicles. So, it may have started out taking the drugs for personal pain or pleasure, but ended up being a rather large operation. The problem with addiction is that although it's tragic to view it also results from persistent conduct of committing felonies. In other words, every time he used [drugs] and purchased them that was a felony. And so, it's the end of a long string of felonies that suddenly one finds [him]self under the control of the very thing that he was seeking something for pleasure or other emotional release."
 {¶ 45} Additionally, the record shows that the court considered R.C. 2929.11 and 2929.12 before imposing Davis's sentence. The court stated in its sentencing entry that it considered the overriding purposes of felony sentencing contained in R.C.2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12. Thus, the trial court did not abuse its discretion when sentencing Davis.
 {¶ 46} However, because we vacated Davis's guilty plea to aggravated possession of drugs, we also vacate the trial court's sentence on that charge.
 VI. CONCLUSION {¶ 47} Accordingly, we affirm the court's judgment in part, reverse its judgment in part and remand for further proceedings consistent with this opinion. *Page 21 
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 22 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that the Appellant and Appellee split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J. Kline, J.: Concur in Judgment and Opinion. *Page 1