DECISION AND JUDGMENT ENTRY
{¶ 1} After Ernest Shaw pled no contest to multiple charges, the trial court sentenced him to nine years in prison for trafficking in drugs, nine years in prison for possession of drugs, and seven years in prison for conspiracy. The court ordered the sentences for the trafficking and the possession convictions to run concurrently. In total, the trial court sentenced Shaw to 16 years in prison.
 {¶ 2} Shaw argues that the trial court erred when it entered separate convictions and sentences for the trafficking and possession offenses because they are allied offenses of similar import that should have merged during sentencing. The Supreme Court of Ohio has recently held that trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) can be allied offenses of similar import, and the State concedes that the court *Page 2 
committed plain error. Because the facts of this case show that Shaw committed the trafficking and possession offenses with a single animus, i.e., to sell the drugs, the trial court plainly erred in entering separate convictions and sentences for each offense.
 {¶ 3} Next, Shaw argues that the trial court abused its discretion in sentencing him to serve 16 years in prison. However, we afford trial courts the most deferential review in their ultimate decisions about the length of sentences if they have applied the proper analysis in reaching those decisions. The record shows that the trial court considered the relevant statutory guidelines and imposed a sentence within the statutory range. And Shaw has failed to affirmatively demonstrate that the trial court abused its discretion in imposing a 16-year term of imprisonment. Accordingly, we affirm in part, reverse in part, and remand.
 I. Facts {¶ 4} Shaw pled no contest to one count of trafficking in a controlled substance, a violation of R.C. 2925.03(A)(2) and a first-degree felony under R.C. 2925.03(C)(4)(f), one count of possession of a controlled substance, a violation of 2925.11 (A) and a first-degree felony under R.C. 2925.11(C)(4)(e), and conspiracy to traffic in a controlled substance, a violation of R.C. 2925.01(A) and a second-degree felony under R.C. 2925.01(J)(2). Before the trial court entered a finding of guilt, the prosecution gave a statement of the facts:
 [T]he State's proof in this case will show that on or about March, 17th, 2007, the defendants, Aaron Burkes and Lovando Kenney were in Scioto County, Ohio; they went back to Columbus to reload or re-up and get more crack cocaine; they picked up the defendant, Eugene Shaw[,] in Columbus at his residence; went to an address on Minnesota Avenue where they bought crack cocaine[.] *Page 3 
 * * *
 The State's proof would show that then they came back down on that date, down to Scioto County; they were followed and stopped on [S.R.] 104; approximately 40 grams of crack cocaine was found within the vehicle; approximately 19.5 grams found on the person of the defendant; another roughly 25 grams found in * * * a small C.D. holder. * * * [T]his Defendant gave a statement as to his complicity in that, and they were taken to the jail and subsequently indicted.
The State also presented Shaw's confession to law enforcement:
 Q. Where were you guys coming from today? Going to?
 A. They came and got me at my house in Columbus. We then went and got some dope and hit the road. I went into a house on Minnesota Avenue and bought a half ounce of crack. It cost me $400. I can double it down here. I was planning on trading the 1/2 ounce for a car. I was going to sell it off my phone, whoever called me.
 Q. How long have you been coming to Richard Boggs'[s][1] to sell crack?
 A. It's been a couple months.
 Q. How many people have been coming over there to buy crack?
 A. 5-6 cars an hour.
 Q. How long have you been involved in the drug trade?
 A. I started when I was 16.
 Q. How are Richard Boggs and Eva Wiley compensated?
 A. I give them a combination of crack and cash totaling about $100 a piece a day.
 Q. What is Lovando's involvement? Aaron's?
 A. He's just driving for Aaron I guess. You all found what he had so that should tell you.
 Q. What did you do with your crack when you were getting stopped?
 A. I had it in my pants the whole time. *Page 4 
The trial court found Shaw guilty of trafficking in crack cocaine, possessing crack cocaine, and conspiracy to traffic in crack cocaine. {¶ 5} At the sentencing hearing, Shaw's mother, Shaw's fiancé, and Shaw himself testified. Shaw's mother, Raneda Johnson Shaw, testified that Shaw had always tried to take care of his family and that Shaw's six children needed him. She explained that sending Shaw to prison would not be beneficial to his family and that he just needed counseling and a decent job. She stated her belief that Shaw's involvement with drugs began with his brother's death in 1994. Finally, she testified that Shaw had been "railroaded" and that it was not fair that the other defendants got to keep their freedom at Shaw's expense.
 {¶ 6} Shaw's fiancé, Chanelle West, testified that Shaw is "a loving guy" who has worked hard to take care of his large family. She explained that it was the strain of trying to take care of so many people as well as the fact that he is "very giving and big hearted" that has caused him to make "bad decisions and deal with some things that he shouldn't have." She testified that incarceration has been good for Shaw because it has been a wake-up call for him, and she felt that everyone deserves a second chance. She testified that he has already started his rehabilitation, and she asked the court not to take Shaw from his family who needed him when Shaw had only made a "mistake."
 {¶ 7} Finally, Shaw testified on his own behalf. Shaw testified that he recognized that he had committed a crime, but he asked for a second chance. He stated that he has taken responsibility for his crimes, and that his arrest and conviction had been a "big lesson." Defense counsel noted that no weapons had been found in the car or on Shaw, that Shaw had cooperated with police, and that he had never had *Page 5 
the opportunity to enter a drug rehabilitation program despite his two prior drug-related, fifth-degree felony convictions.
 {¶ 8} The trial court sentenced Shaw to nine years in prison for the trafficking conviction, nine years in prison for the possession conviction, and seven years in prison for the conspiracy conviction. The court ordered the sentences for the trafficking conviction and the possession conviction to run concurrently. In total, the trial court sentenced Shaw to 16 years in prison. Shaw filed this appeal.
 II. Assignments of Error {¶ 9} Shaw presents three assignments of error:
 1. "The trial court committed plain error when it imposed separate sentences for possessing and trafficking 40 grams of crack cocaine, as those convictions were allied offenses of similar import and should have been merged for sentencing purposes. Fifth and Fourteenth Amendments to the United States Constitution. (T.pp. 79-80; September 25, 2007 Judgment Entry)."
 2. "Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, for failing to object to the trial court's imposition of separate sentences for possessing and trafficking 40 grams of crack cocaine. (T.pp. 79-80; September 25, 2007 Judgment Entry)."
 3. "The trial [court] erred when it sentenced Ernest Shaw to a cumulative prison term of sixteen years. Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. (T.pp. 79-80; September 25, 2007 Judgment Entry)."
 III. Allied Offenses of Similar Import {¶ 10} In his first assignment of error, Shaw argues that the trial court committed plain error in entering convictions and sentences for drug trafficking and drug possession because the two crimes are allied offenses of similar import. The State candidly concedes error. *Page 6 
 {¶ 11} Because Shaw raised no objection at his sentencing hearing, we are limited to plain error review. We may notice plain errors or defects affecting substantial rights despite the appellant's failure to bring them to the attention of the trial court. Crim. R. 52(B). For there to be plain error, there must be a plain or obvious error that "affect[s] `substantial rights,' which the court has interpreted to mean `but for the error, the outcome of the trial [proceeding] clearly would have been otherwise.'" State v. Litreal, 170 Ohio App.3d 670, 2006-Ohio-5416,868 N.E.2d 1018, at ¶ 11, quoting State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68, 759 N.E.2d 1240. We take notice of plain error with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Gardner, 118 Ohio St.3d 420,2008-Ohio-2787, 889 N.E.2d 995, at ¶ 78; State v. Patterson, Washington App. No. 05CA16, 2006-Ohio-1902, at ¶ 13. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'"Barnes, 94 Ohio St.3d at 27, quoting United States v. Olano (1993),507 U.S. 725, 736, 113 S. Ct. 1770, 123 L.Ed.2d 508, quoting in turnUnited States v. Atkinson (1936), 297 U.S. 157, 160, 56 S. Ct. 391, 80 L.Ed. 555.
 {¶ 12} R.C. 2941.25, Ohio's multi-count statute, provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them. *Page 7 
The Supreme Court of Ohio has explained that R.C. 2941.25 requires a two-step analysis:
 In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.
State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, at ¶ 14, quoting State v. Blankenship, 38 Ohio St.3d 116, 117,526 N.E.2d 816.
 {¶ 13} In Cabrales, the court compared the elements of R.C. 2925.03(A)(2) and R.C. 2925.11(A) and held that they are allied offenses of similar import. Cabrales at ¶ 30. The court explained:
 To be guilty of possession under R.C. 2925.11(A), the offender must "knowingly obtain, possess, or use a controlled substance." To be guilty of trafficking under R.C. 2925.03(A)(2), the offender must knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing, or having reason to know, that the substance is intended for sale. In order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must "hav[e] control over" it. R.C. 2925.01(K) (defining "possession"). Thus, trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import because commission of the first offense necessarily results in commission of the second.
Cabrales at ¶ 31. We follow Cabrales and hold that R.C. 2925.03(A)(2) and R.C. 2925.11(A) establish allied offenses of similar import. SeeState v. Hansard, Scioto App. No. 07CA3177, 2008-Ohio-3349, at ¶ 47
("Hansard was convicted of trafficking in crack cocaine under R.C. 2925.03(A)(2) and possession of that same crack cocaine under R.C. 2925.11(A). Therefore, the offenses are allied offense of similar import."). *Page 8 
 {¶ 14} Next, we must look at Shaw's conduct to determine whether "the crimes were committed separately or [whether] there was a separate animus for each crime." Cabrales at ¶ 14. Here, the record shows that Shaw purchased the crack cocaine in Columbus and brought it to Scioto County with the purpose of selling it. Shaw did not commit the possession offense separately from the drug trafficking offense. Nor was there a separate animus for each crime because, according to the prosecutor's statement and Shaw's confession, Shaw possessed and trafficked in the drugs with the purpose of selling them. SeeCabrales at ¶ 31 ("Clearly, Cabrales trafficked in and possessed the marijuana with a single animus: to sell it."). Nothing in the record suggests that Shaw intended to retain a portion of the crack cocaine for his own use. For these reasons, Shaw could not be convicted of and sentenced for both offenses, and the trial court erred in doing so.[2]
 {¶ 15} To demonstrate prejudice, Shaw must show that, "`but for the error, the outcome of the trial [proceedings] clearly would have been otherwise.'" Litreal at ¶ 11, quoting Barnes, 94 Ohio St.3d at 27. Here, the court convicted Shaw of two separate felonies when, under R.C. 2941.25(A), Shaw "may be convicted of only one." But for the trial court's error, Shaw would only have been convicted of the one offense. Accordingly, the outcome of the proceeding clearly would have been different. We recognize that we have previously stated, in dicta, that there is no prejudice to a defendant when the trial court convicts him of allied offenses of similar import but sentences him to concurrent terms of imprisonment. State v. Dunham, Scioto App. No. 04CA2931,2005-Ohio-3642, at ¶ 55. However, in State v. Thompson (July 23, 1999), Washington App. No 98CA10, 1999 WL 552646, at *7, we held that the trial court *Page 9 
commits plain error in convicting a defendant of allied offenses of similar import and that sentencing the defendant to concurrent terms based on those convictions does not cure the prejudice to the defendant. See, also, State v. Gilmore, Hamilton App. Nos. C-070521 C-070522,2008-Ohio-3475, at ¶ 17 ("`[I]t is prejudicial plain error to impose multiple sentences' because the defendant's `"criminal record will reveal convictions for two felonies' when the defendant has committed only one criminal act."'" (quoting State v. Fields (1994),97 Ohio App.3d 337, 347-348, 646 N.E.2d 866, quoting in turn State v. Burl (Dec. 16, 1992), Hamilton App. Nos. C-920167 C-920194, 1991 WL 118213));State v. Dzelajlija, Cuyahoga App. No. 89912, 2008-Ohio-2039, at ¶ 39
("Thus, `it is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently.'" (quoting State v. Sullivan, Cuyahoga App. No. 82816,2003-Ohio-5930, at ¶ 40)). But, see, State v. King, Muskingum App. No. CT2003-0057, 2004-Ohio-6277, at ¶ 25 ("While appellant was convicted on both counts in the indictment, he was given concurrent sentences. Thus, even though the State agrees that aggravated robbery and theft are allied offenses of similar import, appellant suffered no prejudice as he was only given one sentence.").
 {¶ 16} Accordingly, we hold that the trial court committed plain error in entering convictions for both trafficking in crack cocaine and possession of crack cocaine, notwithstanding the fact that the trial court imposed concurrent sentences for the two offenses. For this reason, we sustain Shaw's first assignment of error. Shaw's second assignment of error that his trial counsel was ineffective for failing to object to Shaw's conviction for both offenses is therefore moot. *Page 10 
 IV. Sentencing {¶ 17} In his third assignment of error, Shaw argues that the trial court erred in imposing a cumulative 16-year term of imprisonment and notes various appellate courts have applied different standards of review to sentencing issues. In any case, Shaw argues that the trial court erred in imposing a 16-year sentence under either the abuse of discretion or the clear-and-convincing standards of review.
 {¶ 18} Again, Shaw failed to raise any objection to his sentencing in the trial court, and we are again limited to plain error review. For there to be plain error, there must be a plain or obvious error that "affect[s] `substantial rights,' which the court has interpreted to mean `but for the error, the outcome of the trial [proceeding] clearly would have been otherwise.'" Litreal at ¶ 11, quoting Barnes,94 Ohio St.3d at 27.
 {¶ 19} In State v. Nayar, Lawrence App. No. 07CA6, 2007-Ohio-6092, at ¶ 32, we recently addressed the issue of what standard of review applies in reviewing a sentence:
 At least one commentator has suggested that the abuse of discretion standard contained in [State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus] and at ¶ 100 has very limited application. See Griffin Katz, Ohio Felony Sentencing Law (2007 Ed.) at § 10:20, et seq. Professor Katz contends that the standard of review "remains governed by R.C. 2953 .08(G)(2)," which contains the "clearly and convincing" standard concerning "findings" and the "contrary to law" standard concerning the courts application of the statute's mandated analytical process. Our reading of Foster, which is controlling upon us regardless of its persuasiveness to the commentators, convinces us that the review of sentencing decisions now requires us to apply a "hybrid" standard of review. After Foster, there are still procedural steps or analytical processes the trial court must follow, e.g., the court must consider R.C. 2929.11 (purposes of felony sentencing) and R.C. 2929.12 (seriousness and recidivism factors). Failure to do so amounts to reversible error regardless of whether considered to be "contrary to law" or a "process flaw" under the abuse of discretion standard. *Page 11 
We concluded that "we afford the trial court no deference in its application of the statutory analytical requirements that surviveFoster. However, in conjunction with Foster's mandate, we afford trial courts the most deferential review in their ultimate decisions about the length of sentences if they have applied the proper analysis in reaching those decisions." Nayar at ¶ 33. The Supreme Court has recently adopted this approach in a plurality decision. See State v. Kalish, ___ N.E.2d ___, 2008-Ohio-4912, ¶ 13-17.
 {¶ 20} Shaw does not argue that the trial court failed to apply the proper statutory analytical requirements in imposing the 16-year sentence. Moreover, the record demonstrates that the trial court considered the overriding purposes of felony sentencing contained in R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12 before imposing a sentence within the authorized statutory range. See State v. Davis, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶ 41 ("However, in exercising their discretion, trial courts must still consider R.C. 2929.11 and R.C. 2929.12 before imposing a sentence within the authorized statutory range."). Instead, Shaw challenges the trial court's ultimate decision regarding the length of his sentence. However, the sentence is within the range of time provided by the statute.
 {¶ 21} After the court has conducted a proper statutory analysis, we review the trial court's choice on the appropriate length of an offender's sentence for the abuse of discretion. Nayar at ¶ 33;Davis at ¶ 41. As we explained in Davis:
 "The term abuse of discretion * * * connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Montgomery (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. "`An "abuse of discretion" has also been found where a sentence is greatly excessive under traditional concepts of justice or is *Page 12 
manifestly disproportionate to the crime or the defendant. Woosley v. United States (1973), 478 F.2d 139, 147. * * * Where the severity of the sentence shocks the judicial conscience or greatly exceeds penalties usually exacted for similar offenses or defendants, and the record fails to justify and the trial court fails to explain the imposition of the sentence, the appellate court's [sic] can reverse the sentence. Woosley, supra at 147. This by no means is an exhaustive or exclusive list of the circumstances under which an appellate court may find that the trial court abused its discretion in the imposition of [a] sentence in a particular case.'" [State v. Elswick, Lake App. No. 2006-L-075, 2006-Ohio-7011,] at ¶ 49, quoting State v. Firouzmandi, Licking App. No. 2006-CA-41, 2006-Ohio-5823, at ¶ 56.
Id. at ¶ 42.
 {¶ 22} In essence, Shaw argues that the record does not support his 16-year sentence for trafficking in crack cocaine and for conspiracy to traffic in crack cocaine.[3] In particular, Shaw relies on testimony at trial that Shaw had six children who relied on him; that his drug problems began after his brother's death in 1994; that Shaw had been attempting to enter a drug therapy program at the time of his arrest; that he has begun his rehabilitation while incarcerated; that he has taken responsibility for his crimes; that Shaw has been cooperative with law enforcement; and that Shaw had not been offered the opportunity to enter a drug rehabilitation program after his prior felony convictions.
 {¶ 23} The sentence is within the range provided by the statute and is clearly upon reason and the facts before the court. The trial court noted the severity of Shaw's offenses and the impact that drug trafficking had had on the community. The trial court also understood that Shaw had prior offenses, that Shaw was on probation at the time of his crimes, and that he had large quantities of crack cocaine for resale. The court recognized that Shaw's family would be affected by a long sentence, but it explained that Shaw's actions had affected the families of all the people to whom Shaw had sold *Page 13 
drugs. The prosecutor pointed out that this was not Shaw's first time trafficking drugs in Portsmouth, noting that Shaw admitted he had been coming to Portsmouth for "a couple of months." Shaw also admitted that five to six cars an hour had been coming to buy the crack cocaine he had sold.
 {¶ 24} The trial court did not arbitrarily, unconscionably, or unreasonably impose Shaw's sentence. Accordingly, we overrule his third assignment of error.
 V. Conclusion {¶ 25} We hold that the trial court committed plain error in entering convictions for both trafficking in crack cocaine and possession of crack cocaine because they are allied offenses of similar import. On remand, we direct the trial court to merge Shaw's convictions for trafficking in crack cocaine and possession of crack cocaine and to impose a single sentence of 9 years imprisonment for the merged offenses. We also hold that the trial court did not abuse its discretion in sentencing Shaw to a total of 16 years in prison for his crimes. Accordingly, we affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 14 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Kline, J.: Concur in Judgment and Opinion.
[1] The record suggests that Richard Boggs's house was in Portsmouth.
[2] The trial court did not have the benefit of Cabrales at the time it imposed the sentences.
[3] As we held above, the trial court should have merged Shaw's conviction for possession of crack cocaine with his conviction for trafficking in crack cocaine. *Page 1